UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUY ROLAND SEATON,<br><br>    Petitioner,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent.<br>_____/ | No. C - 08-0105 MHP<br>CR- 02-00044 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Petitioner's Motion to Vacate Plea, Judgment and Sentence Pursuant to 28 U.S.C. section 2255** |

On December 19, 2002, Guy Roland Seaton ("Seaton") was convicted by a jury in this court of six counts relating to Medicare fraud. Based on his conviction, the court sentenced Seaton to a 78-month prison sentence. Now before the court is Seaton's motion to vacate his judgment and sentence pursuant to 18 U.S.C. section 2255. In substance, Seaton contends that he was denied effective assistance of counsel, during both his trial and on appeal, in violation of his Sixth Amendment and due process rights. Having considered the parties' arguments and submissions and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

On May 8, 2001, Seaton, the Chief Operating Officer, President, owner and operator of St. Luke's Subacute Hospital and Nursing Centre, Inc. ("St. Luke's"), was indicted on six counts relating to Medicare fraud. Docket No. 1 (Indictment). Counts Two through Four of the indictment alleged that Seaton violated U.S.C. section 287 by submitting cost reports to the Medicare program

that Seaton knew to be false, fictitious and fraudulent. Count Five alleged that Seaton violated 18 U.S.C. section 1001 by knowingly submitting material false, fictitious and fraudulent statements and representations regarding how much time certain nurses at St. Luke's spent tending to Medicare patients. Count Five alleged that Seaton violated 18 U.S.C. section 1516 by endeavoring to obstruct and impede a federal audit into the fraudulent submissions to the Medicare program. Finally, Count One alleged that Seaton violated 18 U.S.C. section 371 by conspiring to violate the above sections of the criminal code. As is mentioned above, on December 19, 2002, a jury found Seaton guilty of all six counts, and on April 15, 2004, the court sentenced Seaton to a 78-month prison term. Seaton appealed his conviction, and on May 5, 2006, the Ninth Circuit affirmed the court's decision. *United States v. St. Luke's Subacute Care Hosp., Inc.*, 178 Fed. Appx. 711 (9th Cir. 2006). On January 8, 2007, the United States Supreme Court denied his petition for writ of certiorari. *St. Luke's Subacute Hosp. & Nursing Ctr., Inc. v. United States*, 549 U.S. 1116 (2007).

In January 2008, Seaton filed a motion pursuant to 28 U.S.C. section 2255 to vacate or set aside his convictions, alleging nine separate entitlements to relief. Docket No. 294. Seaton did not file the memorandum in support of his petition until May 30, 2008. Docket No. 304. On March 23, 2009, the court issued an order to show cause, requiring that the government respond to three of Seaton's nine arguments. Docket No. 307. With the benefit of full briefing on Seaton's petition, the court now holds that the petition can be resolved without a hearing.

LEGAL STANDARD

A prisoner in federal custody may move to vacate, set aside or correct his or her sentence pursuant to 28 U.S.C. section 2255. 28 U.S.C. § 2255. This federal habeas statute allows a prisoner in federal custody to challenge the imposition or the length of the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id.* If any of these four grounds

2

exist, the court "shall vacate and set the judgment aside and shall discharge the prisoner or re-sentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

DISCUSSION

In the order to show cause issued by this court, the court required the government to respond to only three of the nine grounds for relief that Seaton asserted in his petition for relief. The three remaining claims all assert that Seaton's trial and/or appellate counsel provided Seaton with ineffective assistance of counsel. Claims of ineffective assistance of counsel, both trial and appellate, are examined under the well-worn, two-prong standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a petitioner must first establish that his counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687-68. Judicial review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 689. The relevant inquiry is not what counsel could have done, but whether the choices counsel made were reasonable. *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the petitioner is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

The presumption of reasonable performance is even stronger for appellate counsel because they have wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized as one of the hallmarks of effective appellate assistance. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Throwing in every arguable issue would do disservice to the client because it would detract an appellate judge's attention from stronger issues and reduce appellate

counsel's credibility before the appellate court. *Id.* Therefore, appellate counsel has no constitutional duty to raise every nonfrivolous issue requested by his client. *Id.* at 1434 n.10. To establish ineffective assistance of appellate counsel, a petitioner must show that had his appellate counsel raised an issue on appeal, it would have led to reversal. *See id.* at 1434.

A court need not approach the two-prong analysis in any particular order. *Strickland*, 466 U.S. at 697. Indeed, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

I. <u>Procedural Bar</u>

The court must first contend with the government's argument that Seaton is procedurally barred from raising his ineffective assistance of counsel claims. The government suggests that Seaton waived his ineffective assistance claims by failing to raise them on appeal. The government's argument betrays a shocking ignorance of habeas law related to ineffective assistance of counsel. It is an unchallenged and longstanding maxim that ineffective assistance of counsel claims may be raised in a section 2255 claim whether or not the petitioner could have raised such a claim on appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."). Accordingly, the court proceeds to the merits of Seaton's claims.

II. <u>Ineffective Assistance of Appellate Counsel for Failing to Reraise an Objection to Testimony of Agent Steven Lack</u>

Seaton first argues that his appellate counsel rendered ineffective assistance of counsel by failing to appeal the court's overruling of an evidentiary objection made by Seaton's trial counsel to purported expert opinion testimony offered by Steven Lack. Agent Lack was a Special Agent with the Department of Health and Human Services, Office of Inspector General, and the case agent and supervisor of the investigation into Seaton's activities. Tr. Trans., vol. 2, at 305-06. Although his background and experience may have been sufficient to qualify him as an expert on the administration of the Medicare program, he was not offered as an expert by the prosecution.

4

In order to understand the substance of Agent Lack's testimony and the thrust of Seaton's argument, some background is necessary regarding the Medicare regulations governing the reporting of nursing costs, the nature of the charges against Seaton and the defense that Seaton presented to those charges.[1] The evidence at trial indicated that St. Luke's was only partially certified as a Medicare Skilled Nursing Facility (SNF), meaning that it was only entitled to reimbursement from the Medicare program for nursing services expended on the parts of the facility that were certified as a SNF. Under the regulations and rules governing the administration of the Medicare program, a partial SNF "must have the record keeping capability to insure that it can adequately furnish the financial and statistical data required to separately determine costs applicable to the portion of the facility participating as an SNF and to other parts of the facility." Medicare Provider Reimbursement Manual § 2340, http://www.cms.gov/Manuals/PBM/itemdetail.asp?filterType=none&filterByDID=-99&sortByDID=1&sortOrder=ascending&itemID=CMS021929&intNumPerPage=10.[2] Pursuant to this rule, Seaton and St. Luke's were required to keep records distinguishing between the nursing services delivered to SNF beds (known as Medicare distinct parts) and non-SNF beds (known as non-distinct parts), and then submit those records to Medicare, or in this case, to a fiscal intermediary, Mutual of Omaha. The Medicare Provider Reimbursement Manual explains that the accounting of costs submitted to Medicare or the intermediary "should be an equitable allocation of the nursing service costs between the distinct and other parts of the facility based on records or notations made at the time the services were rendered." *Id.*

The government's theory of the case was that Seaton fraudulently manipulated the time cards of the nurses working at St. Luke's and the cost reports submitted to Mutual of Omaha so that the nurses for whom he could charge the highest rates, registered nurses, worked all of their time on Medicare distinct part of St. Luke's. In this manner, the government argued that Seaton knowingly submitted material false, fictitious and fraudulent statements of nursing service costs to the Medicare program because the statements inequitably allocated nurses' time between the distinct and non-distinct parts of the facility. Seaton's primary, if not sole, defense was that "the Medicare

5

regulations permitted reasonable allocation of costs which need not reflect the actual hours" worked by specific nurses on the distinct and non-distinct parts of the facility. *See* Seaton's Reply at 10. Seaton contended that although his records may not have perfectly tracked which nurses worked in which part at which times, the cost reports submitted to Mutual of Omaha were an equitable allocation of the overall costs incurred at St. Luke's. The court instructed the jury that it could only find Seaton guilty of Counts Two through Five of the indictment if "there [was] no reasonable interpretation of the [Medicare] requirements . . . to which the [cost reports] responded that would make the statements [in the cost reports] true." Tr. Trans., vol. 15, at 2260.

Having provided some background, the court now turns to the specifics of Seaton's ineffective assistance claim. At trial, Agent Lack generally testified that in the course of his investigation, he discovered that Seaton, "through the cost reports filed by St. Luke's Subacute, had inflated the nursing costs to the Medicare program, and that false documents were submitted to Medicare auditors and to Medicare to support the false cost report, and by giving the false documents, schedules, to Medicare auditors, thereby they obstructed Medicare's ability to audit those cost reports." Tr. Trans., vol. 2, at 311-12. On cross-examination, Seaton's trial counsel attempted to establish, among other things, that Seaton "equitably allocated" the costs pursuant to the appropriate regulations. Trial Tr. vol. 3, 400-41. The government, on redirect, questioned Agent Lack as to whether, based on his investigation, he believed that Seaton equitably allocated the costs between the Medicare distinct part and the non-Medicare part of St. Luke's. *Id.* at 475. Agent Lack responded that Seaton "did not equitably allocate [the nurses'] time.". *Id.* Seaton's trial counsel repeatedly objected to the question and Agent Lack's answer on the grounds that it constituted inadmissible expert opinion testimony. *Id.* at 475, 477. The court overruled these objections. *Id.* at 475, 477.[3]

Seaton contends that Agent Lack's testimony was improperly admitted expert opinion testimony pursuant to Federal Rule of Evidence 701 because, without being qualified as an expert witness under Rule 702, Agent Lack was permitted to offer an opinion "based on scientific, technical, or other specialized knowledge"—that Seaton's conduct violated the Medicare

6

reimbursement rules. Seaton further argues that Agent Lack's testimony undermined Seaton's sole defense, and that Agent Lack's testimony was the only evidence adduced by the government regarding the inequitable allocation of costs. Seaton claims that by failing to raise this issue on appeal, his appellate attorney's performance fell below an objective standard of reasonableness under prevailing professional norms, and that had his attorney raised issue on appeal, the Ninth Circuit would have reversed Seaton's convictions on all six counts.

Assuming, *arguendo*, that Agent Lack was improperly permitted to propound an expert opinion regarding Seaton's allocation of Medicare costs, Seaton would still be unable to demonstrate that the admission of such testimony caused him prejudice. An erroneous, nonconstitutional evidentiary ruling only requires reversal of a conviction if it is more probable than not that the error materially affected the verdict. *See United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007). An error is harmless, i.e., it is not more probable than not that the error materially affected the verdict, where ample other evidence in the record supports a defendant's conviction. *See id.* at 905-06 (holding that improperly admitted expert testimony was harmless). A habeas petition must be denied if the government adequately demonstrates that the improperly admitted evidence was harmless, as the petitioner would be unable to satisfy *Strickland*'s prejudice prong. *See Carrafa v. Middleton*, No. 99-3905, 2001 WL 58975, at *9 (N.D. Cal. Jan. 18, 2001) (Walker, J.) (holding that even if evidence establishing the petitioner's guilt improperly admitted, the petitioner's ineffective assistance of counsel claim failed because she could not establish the prejudice prong of the *Strickland* test as there was ample other evidence in the record that proved guilt).[4]

In the instant case, there was overwhelming evidence, both direct and circumstantial, that Seaton inequitably allocated Medicare costs. Belinda Swiatlowski, Seaton's executive assistant, testified that Seaton ordered her to manipulate the payroll records such that all of the hours for the registered nurses who worked at St. Luke's were recorded as having been spent tending to Medicare patients because the registered nurses were paid the highest rates. Trial Tr., vol. 3, at 510-20. Joan Lipanovich, a senior accountant at St. Luke's, testified that Seaton ordered her, without any justification, to manipulate the company books to shift non-Medicare costs to Medicare. Trial Tr.,

vol. 4, at 685-87.  Carmelita Dimaano, Seaton's director of nursing, testified that Seaton ordered her to make up false schedules and submit them to federal auditors in order to obfuscate earlier, fraudulent cost reports that had been submitted to Mutual of Omaha.  Trial Tr., vol. 7, at 1164-65. The government also introduced documentary evidence of two separate sets of accounting ledgers, one in which Seaton documented the actual hours spent by nurses on Medicare patients and one in which Seaton fraudulently manipulated the hours so that the registered nurses spent all of their time working on Medicare patients. Furthermore, Agent Lack testified regarding the evidence unearthed by his investigation and the manner in which Seaton went about defrauding the Medicare program. Thus, contrary to Seaton's assertion, Agent Lack was not the only government witness to testify that Seaton's allocation of costs was not reasonable and equitable.  Based on the overwhelming evidence of guilt, it is not more probable than not that Agent Lack's opinion testimony that Seaton inequitably allocated costs materially affected the guilty verdicts on any of the counts.  It follows, therefore, that even if Seaton's appellate attorney had challenged the admission of Agent Lack's opinion testimony, there is no likelihood that it would have resulted in a reversal of Seaton's convictions.  Accordingly, Seaton cannot demonstrate that his appellate counsel's performance prejudiced him, and his section 2255 claim based upon the ineffectiveness of his appellate counsel in challenging the admission of Agent Lack's testimony necessarily fails.

III.     Ineffective Assistance of Trial and Appellate Counsel for Failure to Argue *Yates* Error

Next, Seaton argues that he received ineffective assistance of trial and appellate counsel because of their failure to argue that the jury instructions for the conspiracy charge, Count One, were impermissible under *Yates v. United States*, 354 U.S. 298 (1957) *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978).  In *Yates*, the United States Supreme Court established that a jury verdict must "be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* at 312.  Seaton contends that Count One of the indictment alleged that the objects of Seaton's conspiracy were (1) reporting false and fictitious direct nursing service costs; and (2) misrepresenting the level of nursing care provided to Medicare patients.  According to Seaton, this is problematic because the second object

8

does not violate 18 U.S.C. section 287 or 1001. The jury, Seaton continues, was not required to return a special verdict as to which of these two objects of the conspiracy the jury agreed that Seaton entered into an agreement to commit. Seaton insists that this constitutes *Yates* error because it is impossible to know whether the jury relied upon the first, legally proper or the second, legally flawed ground in returning a guilty verdict on Count One. Seaton argues that he received ineffective assistance of trial and appellate counsel because neither his trial nor appellate counsel raised this issue. Seaton urges that this prejudiced him because had his counsel argued *Yates* error at either the trial or appellate level, it would have resulted in an acquittal on Count I at trial or reversible plain error on appeal.

As a preliminary matter, the court notes that under the Sentencing Guidelines that governed Seaton's sentence, he would have received the identical sentence whether or not he was convicted of the conspiracy count he now challenges.[5] Ninth Circuit precedent makes clear, however, that even if Seaton's success on his section 2255 petition would not result in the modification of his sentence, he still suffers prejudice, if, but for his attorney's unprofessional conduct, he would have been acquitted of the conspiracy charge. In *United States v. Palomba*, 31 F.3d 1456, 1465-66 (9th Cir. 1994), a section 2255 petitioner asserted that he received ineffective assistance of counsel after he was convicted of multiple counts of mail and wire fraud and one count of making false statements to a federal agency. Pursuant to the Guidelines, the petitioner was sentenced consecutive terms of 60 and 11 months for the mail fraud counts, with the remaining sentences served concurrently. In his habeas petition, the petitioner complained that his attorney failed to move to dismiss the wire fraud counts, which had been added to the case via a superseding indictment filed more than seventy days after the filing of the original indictment, in violation of the Speedy Trial Act. *Id.* at 1459-60. It was undisputed that whether or not the petitioner had been convicted of the wire fraud counts, he would have received the identical sentence. The court held that even if the invalidation of the wire fraud counts would not affect the petitioner's sentence in any way, the convictions' continued validity caused the petitioner prejudice because of the unforeseeable collateral consequences they might cause him in the future. *Id.* at 1465 (discussing collateral consequences such as increased future

9

sentences if the petitioner were ever to recidivate, "the additional stigma of improper conviction and [the improper conviction's] use to impeach the defendant's credibility in future proceedings"). Accordingly, this court must address the merits of Seaton's *Yates* argument.

Seaton's argument fails, however, because it is built upon a false premise: that submitting a cost report to Mutual of Omaha that "misrepresented the level of nursing care provided to Medicare patients" is not a crime.[6] As the court properly instructed the jury regarding Count Five, Seaton could only be found guilty of violating 18 U.S.C. section 1001 if the government established beyond a reasonable doubt:

> First, that the defendant made a false statement in a matter within the jurisdiction of the United States Department of Health and Human Services Health Care Financing Administration;
>
> Second, the defendant acted willfully, that is, deliberately and with knowledge that the statement was untrue;
>
> And third, the statement was material to the United States Department of Health and Human Services Health Care Financing Administration activities or decisions.

Tr. Trans., vol. 15, at 2259. Submitting a Medicare cost report to Mutual of Omaha that "misrepresented the level of nursing care provided to Medicare patients" at St. Luke's satisfies every element of the crime. By definition, a misrepresentation is a false statement. Seaton does not contest that the level of nursing care provided to Medicare patients was both "within the jurisdiction" and "material to the . . . activities or decisions" of the Health Care Financing Administration. And Seaton has not challenged that the false statements transmitted to Mutual of Omaha were knowingly and deliberately untrue. Seaton does not cite a single case (or even engage in substantive analysis of the statute itself) that supports his reading of section 1001. An attorney does not fall below his constitutional duty to his client by failing to raise a non-meritorious issue. Because the issue that Seaton claims his attorneys should have raised was doomed to failure, he cannot satisfy either *Strickland*'s performance or prejudice prongs. Accordingly, his claim based upon *Yates* error is denied.

IV.   Failure of Trial and Appellate Counsel to Advocate Correct Sentencing Standard

10

Finally, Seaton contends that both his trial and appellate counsel provided ineffective assistance of counsel by failing to oppose a two-point sentencing enhancement imposed upon Seaton pursuant to U.S.S.G. section 3B1.3 for abuse of a position of trust. Specifically, Seaton avers that his trial and appellate counsel failed to argue that out-of-circuit precedent, namely *United States v. Garrison*, 133 F.3d 831 (11th Cir. 1998), compelled a conclusion that Seaton's conduct—false cost reporting by a care provider to a fiscal intermediary regarding Medicare reimbursement—could not, as a matter of law, constitute an abuse of a position of trust. Seaton argues that his trial counsel's performance "fell below an objective standard of reasonableness" because he "should have . . . explained that *Garrison* was on all fours." Seaton's Mot. at 41; *see also id.* at 40 ("Seaton's sentencing counsel rendered i[neffective assistance of counsel] in not advocating at the final sentencing hearing that U.S.S.G. 3B1.3 . . . did not apply to Seaton under *Garrison*); *id.* 45 ("It was ineffective assistance of counsel not to present arguments [relying upon *Garrison*] when the law was settled at the time in its favor . . . .").

The court need not address the merits of Seaton's argument. "Omitting citation of [a] non-controlling, albeit analogous, case does not amount to constitutionally inadequate representation." *Morales v. United States*, No. Civ. 03-980ADM, 2003 WL 22999561, at *9 (D. Minn. Dec. 18, 2003) (citing to *United States v. Garcia*, 997 F.2d 1273, 1283 (9th Cir. 1993), for the proposition that "failure to cite [a] non-binding decision did not render legal assistance ineffective").[7] Even assuming, as Seaton suggests, that *Garrison* was "on all fours" with his own case, Seaton could not suffer any prejudice by his trial or appellate counsel's failure to cite *Garrison*. Neither this court nor the Ninth Circuit would have been bound by *Garrison*, and both would have been free to reach a contrary result. Indeed, in all likelihood this court would have ruled to the contrary in view of the fact that, although this Circuit has not spoken on the issue, all of the other circuits that have done so have come to the opposite conclusion from *Garrison*. *See United States v. Hayes*, 574 F.3d 460, 479-80 (8th Cir. 2009)("the majority of our sister circuits that have addressed the question have held that health care providers who defraud Medicaid or Medicare may be subject to the abuse-of-trust enhancement", citing four other circuits so holding). Therefore, had

11

his attorneys relied upon *Garrison* in arguing that the abuse of discretion enhancement should not apply, "there is [not] a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

CONCLUSION

Seaton's motion to vacate plea, judgment and sentence due to ineffective assistance of counsel is DENIED.

IT IS SO ORDERED.

Dated: May 14, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# **ENDNOTES**

1. For a more general description of the Medicare program, see *United States v. White*, 492 F.3d 380 387-89 (6th Cir. 2007).

2. Under the rule, "Nursing service costs refer only to gross salaries and wages of nursing and related personnel, such as registered nurses, LPN's, aides, etc."

3. The following, relevant colloquy to place at trial.

> The government: Now, [the defense] asked you about equitable allocation. Based on your investigation here, did the defendants equitably allocated their costs between the Medicare distinct party and the non-Medicare part?
>
> The defense: Objection, inadmissible lay opinion, no foundation, no expertise.
>
> The court: Objection overruled.
>
> The defense: And speculation.
>
> The court: Objection overruled.
>
> Agent Lack: No, they did not. They inequitably, or, they did not equitably allocate their time.
>
> The government: Why do you say that?
>
> Agent Lack: What they did is they double-billed -- can I use the charts, of the floor plan?
>
> [Explanation of "double-billing" engaged in by Seaton at St. Luke's]
>
> The defense: I move to strike that characterization of double-billing. There's no charge of this. This is simply inadmissible lay opinion and mischaracterization of the evidence, your honor.
>
> The court: Objection is overruled.

Tr. Trans., vol. 3 at 475-77.

4. Seaton cites a number of cases suggesting that in order for the harmless error rule to apply, the government must demonstrate, beyond a reasonable doubt, that the error was harmless. *See* Seaton's Reply at 8 (citing to *United States v. Vargas*, 933 F.2d 701, 704-05 (9th Cir. 1991), and *Chapman v. California*, 386 U.S. 18 (1967)). The cases cited by Seaton, however, address circumstances in which the erroneous admission of evidence violated a defendant's constitutional rights, such as when testimony is admitted in violation of the Confrontation Clause. Here, the error complained of by Seaton is that the court admitted evidence in violation of Federal Rules Evidence 701 and 702, which govern the admission of expert testimony. Neither Rule 701 nor 702, implicate any constitutional rights of defendants. Accordingly, the court will apply the standard for non-constitutional error, which mandates reversal only where "it is more probable than not that the error materially affected the verdict." *See Freeman*, 498 F.3d at 901.

5. A close examination of the Presentence Report submitted in his underlying case, which the court adopted in full, indicates that the conspiracy conviction played no role in determining his base offense level or any enhancements that increased his offense level. Under the 2000 revision to the United States

Sentencing Guidelines ("the Guidelines"), the version that governed Seaton's case, the court placed Seaton in criminal history category I and calculated a total offense level of 28, resulting in a mandatory guidelines range of 78 to 97 months. The court sentenced Seaton to 78 months in prison, the low end of the range.

6. The court assumes, *arguendo*, that the allegation that Seaton challenges in paragraph ten of the indictment identified the object of the conspiracy charged in Count One. Such is likely not the case, as the allegations in paragraph ten are naturally interpreted as alleged overt acts, not the object of the conspiracy. Paragraph nine sets forth the formal charge against St. Luke's and Seaton, stating that

> [b]eginning in or about 1996, and continuing through in or about 2000, within the Northern District of California, and elsewhere, the defendants St. Luke's Subacute Hospital and Nursing Centre, Inc. and Guy Roland Seaton, together with others known and unknown to the Grand Jury, did *knowingly and intentionally conspire to make false statements* to defraud the United States of its right to have the Medicare Program administered honestly and free from deceit and fraud and to have Medicare Program funds disbursed in accordance with the laws of the United States.

Indictment ¶ 9 (emphasis added). The natural reading of this paragraph is that the object of the conspiracy was to knowingly and intentionally make false statements to the United States, which is a crime under 18 U.S.C. section 287.

Furthermore, the allegations in paragraph ten appear in a section of the complaint entitled "Method and Means of the Conspiracy." Although the court need not reach the issue, it appears that these allegations set forth overt acts in furtherance of the conspiracy, as opposed to the objects of the conspiracy.

7. It should be noted, as well, that Seaton's trial counsel *did* cite to *Garrison* in his sentencing memorandum. *See* Docket No.191 (Seaton's Sentencing Mem.) at 8. As a result, Seaton would, in all likelihood, be unable to establish that his trial counsel's performance was deficient in order to satisfy the first prong of the *Strickland* analysis. *See Schmidt v. United States*, No. 06-04378, 2006 WL 3734594, at *2 (N.D. Cal. December 18, 2006) (Breyer, J.) (holding that a "[p]etitioner cannot suffer prejudice from his attorney's failure to raise an argument when the argument was actually made.").